1  HANSON BRIDGETT LLP
   BATYA F. FORSYTH, SBN 192396
2  bforsyth@hansonbridgett.com
   SUSANNA L. CHENETTE, SBN 257914
3  schenette@hansonbridgett.com
   425 Market Street, 26th Floor
4  San Francisco, California 94105
   Telephone:    (415) 777-3200
5  Facsimile:    (415) 541-9366

6  *Attorneys for Plaintiff*
   GMMR STONE, LLC

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| GMMR STONE, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>CITIBANK, N.A., a national bank, and JOHN DOE, address unknown,<br><br>    Defendants. | Case No. 3:26-cv-1062<br><br>**COMPLAINT FOR UNJUST ENRICHMENT, CONVERSION, MONEY HAD AND RECEIVED, PAYMENT BY MISTAKE, NEGLIGENCE, FRAUD, AND VIOLATION OF CAL. BUS. & PROFS. CODE §§ 17200 *ET SEQ.*<br><br>**DEMAND FOR JURY TRIAL** |

    Plaintiff GMMR Stone, LLC ("GMMR" or "Plaintiff"), a California limited liability corporation, brings this action ("Action") against Defendant Citibank, N.A., a United States national bank ("Citibank" or "Defendant") and John Doe, whose identity Citibank knows or should know but to Plaintiff remains yet to be identified.

**PARTIES**

    1.    Plaintiff GMMR Stone, LLC is a limited liability corporation doing business in Contra Costa County, California.

    2.    Plaintiff is informed and believes that Defendant Citibank, N.A. is a national bank organized under the laws of the United States and located in Sioux Falls, South Dakota. Citibank does, and at all times relevant to this Action did, conduct business in the County of Contra Costa, State of California.

3. Plaintiff is informed and believes that Defendant John Doe is an individual living outside the State of California, but who knowingly and intentionally targeted Plaintiff's California business to steal funds. Plaintiff includes John Doe in this federal diversity action asserting state law claims because, on information and belief, Citibank knows the identity of John Doe and is refusing to disclose it to Plaintiff. After Citibank provides John Doe's identity to Plaintiff, Plaintiff will amend its complaint with John Doe's true name.

4. Non-party entity UBS Group AG ("UBS") is a Swiss multinational investment bank and financial services firm founded and based in Switzerland, with headquarters in both Zurich and Basel, and with a Wealth Management division operating throughout the United States, including in Contra Costa, California.

5. Non-party entity KB Stone Diamond Corp, dba Diamond Construction Inc., ("Diamond Construction") is a California corporation with a principal place of business in Contra Costa County, California.

**JURISDICTION AND VENUE**

6. The Court has jurisdiction over all the claims alleged herein pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there exists complete diversity between Plaintiff and Defendant. Plaintiff GMMR Stone, LLC, is incorporated in California with a principal address of 230 Piedmont Lane, Danville, CA 94526. Defendant Citibank, N.A. is a national bank located in Sioux Falls, South Dakota.

7. This Court has personal jurisdiction over Citibank because a substantial part of the events giving rise to the allegations herein occurred in this District, and Citibank purposefully availed itself of the laws of the State of California through its business activities.

8. This Court has personal jurisdiction over John Doe because a substantial part of the events giving rise to the allegations herein occurred in this District, and John Doe purposefully availed itself of the laws of the State of California through his conduct directed to California and California businesses.

**VENUE**

9. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because

Plaintiff resides, Defendant conducts business, and the complained of activities occurred in the Northern District of California.

### DIVISIONAL ASSIGNMENT

10. Pursuant to Civil L.R. 3-2(c), this case may be properly assigned to the San Francisco or Oakland Division of the Northern District of California because a substantial part of the events or omissions giving rise to the claims herein occurred in Contra Costa County.

### FACTUAL BACKGROUND

11. GMMR is a customer and account holder with UBS's Wealth Management division.

12. GMMR's holdings at UBS include a loan account ("UBS Account") for funding a high-end construction project to build luxury senior condominiums ("Construction Project"), which Plaintiff anticipates completing in early 2026.

13. Plaintiff's general contractor for the Construction Project is Diamond Construction.

14. Plaintiff's payments to Diamond Construction were crucial to the Construction Project, in which Plaintiff invested a substantial amount of money and for which any delays would cause Plaintiff to lose money.

15. Plaintiff understood that if it failed timely to pay Diamond Construction, then Diamond Construction would be unable to pay its subcontractors, who, without payment, will stop working on the Construction Project, resulting in delay to the Construction Project and lost money for Plaintiff.

**Citibank Failed to Comply with Banking Regulations**

16. On October 23, 2025, Plaintiff attempted to wire $3,007,114.67 ("First Payment") to Diamond Construction to pay for work completed by Diamond Construction and its subcontractors.

17. On information and belief, instead of delivering Plaintiff's attempted $3,007,114.67 First Payment to Diamond Construction, Plaintiff's $3,007,114.67 First Payment ended up in a fraudulent Citibank account.

///

18. On information and belief, Citibank was, and remains, in possession of Plaintiff's $3,007,114.67 First Payment or at least a portion thereof.

19. On information and belief, Citibank knows (or should know) about any fraudulent accounts maintained at Citibank. Citibank must comply with the Bank Secrecy Act, as enforced by the Financial Crimes Enforcement Network (FinCEN), as well as the USA PATRIOT Act ("Banking Regulations"). Pursuant to these Banking Regulations, Citibank must abide by "Know Your Customer" requirements; it must establish a Customer Identification Program and perform Customer Due Diligence, including Enhanced Due Diligence for high-risk customers. Citibank also must subject high-value wire transfers, such as Plaintiff's over three million dollar wire, to additional vetting to protect against theft and fraud.

20. Because of these Banking Regulations, Citibank is in the best position to prevent fraud at Citibank and to ensure that its customers do not engage in fraud.

21. On information and belief, Citibank negligently or intentionally failed to comply with these Banking Regulations. As a result of Citibank's failures to comply, Citibank intentionally or negligently caused or allowed Plaintiff's $3,007,114.67 First Payment to be obtained by bad actors controlling a fraudulent Citibank account ("Citibank's Fraudulent Account").

22. Alternatively, on information and belief, Citibank negligently or intentionally failed to prevent Plaintiff's $3,007,114.67 First Payment from being obtained by Citibank's Fraudulent Account.

23. Alternatively, on information and belief, Citibank negligently or intentionally acted in conjunction with, or aided and abetted, or conspired with, and had an agreement with, the account holder of Citibank's Fraudulent Account to obtain Plaintiff's $3,007,114.67 First Payment.

**Citibank Aided and Abetted Its Fraudulent Account Holder**

24. On information and belief, Citibank knows or should have known about the fraudulent activity related to Citibank's Fraudulent Account but nevertheless allowed it to persist or failed to investigate it, resulting in the theft of Plaintiff's $3,007,114.67 First Payment.

25. On information and belief, the account holder of Citibank's Fraudulent Account ("Fraudulent Account Holder" or "John Doe") misrepresented himself to be an entity he was not to redirect wired funds into Citibank's Fraudulent Account.

26. On information and belief, Citibank actively participated in Citibank's Fraudulent Account Holder's redirecting of Plaintiff's $3,007,114.67 First Payment into Citibank's Fraudulent Account by verifying, and then approving, the transfer. On information and belief, Citibank performed these actions in part on Plaintiff's computer by directing funds from Plaintiff's UBS account into Citibank's Fraudulent Account Holder's account.

27. Because of the Banking Regulations, on information and belief, Citibank knowingly and intentionally maintained the Fraudulent Account and knowingly and intentionally deposited Plaintiff's $3,007,114.67 First Payment into the Fraudulent Account. Plaintiff's $3,007,114.67 First Payment did not end up in Citibank's Fraudulent Account against Citibank's will; Citibank took, or must have taken, overt steps to allow the Fraudulent Account Holder to have an account and to use it to deposit criminally obtained funds. Citibank assisted the Fraudulent Account Holder by knowingly maintaining the Fraudulent Account and transferring Plaintiff's now-stolen $3,007,114.67 First Payment into it.

28. Alternatively, on information and belief, Citibank subjectively believed that there was a high probability that some Citibank account holders use, and specifically that Citibank's Fraudulent Account Holder used, Citibank accounts to conduct fraudulent activity and to steal from others. Citibank, however, took deliberate actions to avoid learning the details of how its account holders use, and how the Fraudulent Account Holder specifically used, Citibank accounts to conduct fraudulent activity and to steal money from others.

29. On information and belief, Citibank closed its eyes to the Citibank Account Holder's obvious crime. Citibank had never before obtained any money from Plaintiff's UBS account. Citibank had never before delivered any money from Plaintiff to Citibank's Fraudulent Account. Accordingly, such a large first-time transfer alone should have raised Citibank's suspicions, flagging the transaction for further review. It did not. Instead, Citibank looked the other way while delivering Plaintiff's $3,007,114.67 First Payment to a fraudulent account.

30. Plaintiff's wire transfer was for a significant sum, which required additional scrutiny from Citibank in compliance with Banking Regulations. On information and belief, Citibank did not perform this additional scrutiny. On information and belief, Citibank failed to perform the basic vetting necessary to prevent Plaintiff's $3,007,114.67 First Payment from being stolen, misdelivered, or subject to Citibank's known fraudulent account holders.

31. Citibank is subject to a currently pending lawsuit by New York's Attorney General for failures to comply with the Banking Regulations and to monitor its accounts and accountholders for fraud or other criminal activity. As alleged, Citibank knows criminal activity occurs in its accounts and chooses not to prevent it, letting such fraud proceed unchecked, allowing criminals to steal large sums of money. Citibank's willful blindness, or negligence, with regard to criminals intercepting wires using Citibank accounts remains unchecked by Citibank, as if Citibank either does not care or wants such activity to continue.

32. Citibank also refuses to converse with Plaintiff, UBS, or Plaintiff's counsel to provide any information or details about the status or location of Plaintiff's $3,007,114.67 First Payment.

33. Citibank further refuses to provide any information or details about Citibank's Fraudulent Account or Citibank's Fraudulent Account Holder to Plaintiff. If Citibank were complying with Banking Regulations, Citibank knows the identity of its Fraudulent Account Holder. Despite repeated requests, Citibank is shielding Citibank's Fraudulent Account and Citibank's Fraudulent Account Holder from Plaintiff. Citibank refuses to divulge its Fraudulent Account Holder's name, therein aiding and abetting the Fraudulent Account Holder.

34. On information and belief, Citibank's refusals to investigate properly suspicious accounts or to vet high-value wire transfers, while knowing it has an ongoing problem with fraudulent accounts, constitutes willful blindness designed to deliberately shield Citibank from liability.

**Plaintiff's Second Three Million Dollar Payment**

35. Because Plaintiff understood that Diamond Construction's subcontractors would cease work on the Construction Project if they were not timely paid, and because Plaintiff's

$3,007,114.67 First Payment was not delivered to Diamond Construction, Plaintiff had to generate—quickly—another $3,007,114.67 payment ("Second Payment").

36. To generate the Second Payment, Plaintiff and its partners were forced to sell assets and otherwise locate funds that were not intended to be used for Diamond Construction or the Construction Project. As a result, Plaintiff and its partners incurred sizeable and unexpected tax burdens and lost market gains and other yields that Plaintiff's and its partners' assets would have received but for the Second Payment ("Second Payment Losses and Expenses").

37. Had Citibank not failed to deliver, or aided and abetted in the mis-delivery of, Plaintiff's $3,007,114.67 First Payment, Plaintiff would not have incurred these additional Second Payment Losses and Expenses

### Citibank Ignores Plaintiff

38. Immediately upon learning that Plaintiff's $3,007,114.67 First Payment was not received by Diamond Construction, Plaintiff informed Citibank and demanded that Citibank return the funds. Citibank did not.

39. On Plaintiff's behalf, UBS's team has attempted to communicate with Citibank to obtain information regarding these events. Citibank has declined to respond to UBS's repeated inquiries.

40. On December 15, 2025, Plaintiff—through counsel—sent a letter to Citibank's legal department requesting information about the location and status of Plaintiff's $3,007,114.67 First Payment. Citibank did not respond.

41. On January 12, 2026, Plaintiff again sent a letter to Citibank's legal department, again demanding information and reimbursement of Plaintiff's $3,007,114.67 First Payment. Citibank again did not respond.

42. As of filing of this Action, Citibank fails, and continues to fail, to explain where Plaintiff's $3,007,114.67 First Payment is, into which account it was deposited, the owner of the account, or any additional information regarding Citibank's Fraudulent Account or its holder.

43. On information and belief, Citibank's refusal to communicate constitutes additional evidence that Citibank is colluding with, aiding and abetting, conspiring with, and/or negligently

or intentionally intending to collude, to aid and to abet, and/or to conspire with Citibank's Fraudulent Account's holder's conversion of Plaintiff's $3,007,114.67 First Payment.

### FIRST CAUSE OF ACTION

**Unjust Enrichment**

**(All Defendants)**

44. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

45. Defendants were enriched at the direct expense of Plaintiff, by mistakenly receiving $3,007,114.67 of Plaintiff's money to which Defendants were not entitled.

46. Alternatively, Citibank aided and abetted John Doe to be unjustly enriched as described.

47. Equity and good conscience militate against permitting Defendants to retain the misappropriated funds.

### SECOND CAUSE OF ACTION

**Conversion**

**(All Defendants)**

48. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

49. Defendants have and are continuing to exercise unauthorized dominion over specifically identifiable assets of Plaintiff, namely the $3,007,114.67 that was transferred on October 23, 2025.

50. Alternatively, Citibank aided and abetted John Doe to convert, wrongly, Plaintiff's assets as described.

51. Despite Plaintiff's demands that Citibank return the assets in question, Citibank has refused to do so.

### THIRD CAUSE OF ACTION

**Money Had and Received**

**(All Defendants)**

52. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

53. On October 23, 2025, Defendants mistakenly received $3,007,114.67 belonging to Plaintiff, and to which Defendants had no claim.

54. Defendants benefitted, and continue to benefit, from the receipt of Plaintiff's money.

55. Alternatively, Citibank aided and abetted John Doe with receiving mistaken money, as described.

56. Under principles of equity and good conscience, Defendants should not be permitted to keep Plaintiff's money.

## FOURTH CAUSE OF ACTION

### Payment By Mistake

### (All Defendants)

57. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

58. On October 23, 2025, Plaintiff mistakenly sent payments to Defendants. The payments were intended to pay a Citibank customer account to which Plaintiff had previously wired money.

59. Instead, Plaintiff transferred the amount to a fraudulent account, to which Plaintiff has no relation and to which Plaintiff did not intend to transfer.

60. Defendants derived a benefit as a result of the mistaken payments.

61. Alternatively, Citibank aided and abetted John Doe with receiving a mistaken payment.

62. Equity demands restitution by Defendants to Plaintiff.

## FIFTH CAUSE OF ACTION

### Negligence

### (Citibank)

63. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations

as though fully set forth in this paragraph.

64. Citibank owes Plaintiff a duty of care to comply with Banking Regulations.

65. Citibank breached this duty of care by allowing Citibank's Fraudulent Account to operate freely at Citibank.

66. Citibank's breach resulted in damages to Plaintiff, including but not limited to Plaintiff's $3,007,114.67 First Payment as well as the amounts Plaintiff and its partners incurred to obtain the Second Payment.

## SIXTH CAUSE OF ACTION

### Fraud

### (All Defendants)

67. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

68. Citibank's Fraudulent Account Holder made a false representation to Plaintiff in knowingly purporting to be someone he is not with the intent to induce Plaintiff's reliance on his representations, which such reliance was reasonable, resulting in damage.

69. Citibank aided and abetted, including through willful blindness, its Fraudulent Account Holder in perpetuating his fraud.

70. Defendants' fraud resulted in damages to Plaintiff, including but not limited to Plaintiff's $3,007,114.67 First Payment as well as the amounts Plaintiff and its partners incurred to obtain the Second Payment.

## SEVENTH CAUSE OF ACTION

### Violation of Cal. Bus. & Profs. Code §§ 17200 *et seq.*

### (Citibank)

71. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as though fully set forth in this paragraph.

72. Citibank's developed business practices of allowing fraudulent accounts, including Citibank's Fraudulent Account, to exist are fundamentally unfair to Plaintiff.

///

73. Plaintiff's injury here is substantial – a loss of over three million dollars, and associated costs and fees and lost income with the Second Payment.

74. Plaintiff's substantial injury is not outweighed by any countervailing benefits to consumers because no consumer benefits from the use of fraudulently obtained or stolen funds.

75. Plaintiff's substantial injury is not outweighed by any countervailing benefits to Citibank because Citibank is required to comply with the Banking Regulations, which exist to ensure that banks vet customers and large wire transfers with the goal of, *inter alia*, eliminating fraudulent banking activity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

1. Ordering Defendants, jointly and severally, to immediately return the misappropriated $3,007,114.67;

2. Declaring that Plaintiff is rightfully entitled to the misappropriated funds;

3. Ordering Defendants, jointly and severally, to pay Plaintiff interest on the funds misappropriated by Defendants for the duration that they remain with Defendants;

4. Ordering Defendants, jointly and severally, to pay fees, expenses, taxes, and other amounts that Plaintiff either incurred or lost to generate the Second Payment;

5. Ordering Defendants, jointly and severally, to pay damages reflecting their misconduct to Plaintiff;

6. Awarding reasonable costs and expenses incurred in this Action, including attorneys' fees, payable by Defendants jointly and severally;

7. Awarding punitive damages, jointly and severally, for Defendants' bad faith conduct of knowingly and intentionally retaining Plaintiff's $3,007,114.67 First Payment and/or distributing it to a fraudulent account in an amount to be determined by a jury;

8. Awarding pre- and post-judgment interest on all such damages, monetary or otherwise, to be paid jointly and severally by Defendants; and

///

9. Awarding further relief as the Court may deem just and proper.

DATED: February 3, 2026          HANSON BRIDGETT LLP

By: _____
BATYA F. FORSYTH
SUSANNA L. CHENETTE
*Attorneys for Plaintiff*
GMMR STONE, LLC

### PLAINTIFF'S JURY DEMAND

Plaintiff hereby demands a jury trial on all claims for relief triable to a jury.

DATED: February 3, 2026          HANSON BRIDGETT LLP

By: _____
BATYA F. FORSYTH
SUSANNA L. CHENETTE
*Attorneys for Plaintiff*
GMMR STONE, LLC